PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**July 17, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 08-44074 |
| MicroStructure Technologies Inc., | **MEMORANDUM DECISION** |
| Debtor. | **NOT FOR PUBLICATION** |

THIS MATTER came before the Court as a three day evidentiary hearing on April 8, April 9, and June 18, 2009, on a motion by MicroStructure Techonologies Inc. (MicroStructure) for an award of attorneys' fees and damages pursuant to 11 U.S.C. § 303(i). At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

**I**

**FINDINGS OF FACT**

MicroStructure is a high technology company specializing in molecular structures for use in defense and industry. MicroStructure is owned by three shareholders, Mary Moore, Robert Moore (collectively "Moores") and Joe Birmingham (Birmingham). The Moores are

MEMORANDUM DECISION - 1

brother and sister and collectively own 60% of the outstanding stock of MicroStructure and a majority of seats on the Board of Directors. Birmingham owns the remaining 40%.

Prepetition, a dispute arose between the Moores and Birmingham over the operation of MicroStructure. On July 18, 2008, Todd Silberman (Silberman) and Birmingham proposed a business buyout plan pursuant to which they would assume a controlling interest in a new entity that would receive all of the patents and technology currently owned by MicroStructure. Under this plan, the Moores would receive a minority interest in the new entity. The Moores refused to agree to this proposed buyout.

On August 16, 2008, Birmingham sent a letter to both Mary and Robert Moore indicating that their employment with MicroStructure had been terminated. On August 18, 2008, Mary Moore called a special meeting of the board of directors to be held the next day. The only agenda item was the dismissal of Birmingham as an officer and employee of MicroStructure. Birmingham was dismissed on August 19, 2008.

Silberman, Dave Cooke and IPR Consultants LLC (collectively "Petitioning Creditors") filed an involuntary bankruptcy petition against MicroStructure on August 19, 2008. On the petition, Silberman states a claim of $3,882.25, Cooke a claim of $15,000 and IPR Consultants LLC of $4,120.20. Several days later, MicroStructure filed a complaint against Birmingham in Clark County Superior Court (State Court) alleging conversion and requesting injunctive relief. On August 29, 2008, the State Court issued a preliminary injunction against Birmingham, requiring him to vacate the company offices and return various computer and production equipment.

MEMORANDUM DECISION - 2

On August 28, 2008, Silberman filed Articles of Incorporation with the Oregon Secretary of State for a company called "MicroST, Inc." Silberman is listed as the registered agent for MicroST, Inc.

On September 12, 2008, MicroStructure filed a motion to dismiss the involuntary petition (Motion to Dismiss). The Motion to Dismiss was noted for hearing on October 7, 2008. MicroStructure's Answer to Involuntary Petition and Counterclaims under 11 U.S.C. § 303(i) was filed on September 19, 2008.

Joseph Field (Field) filed a notice of appearance as counsel for the Petitioning Creditors on October 3, 2008. On that same date, the Petitioning Creditors filed a response to MicroStructure's Motion to Dismiss. A reply was filed by MicroStructure on October 6, 2008. At the hearing held on October 7, 2008, the Court scheduled MicroStructure's Motion to Dismiss for an evidentiary hearing on December 3, 2008. On October 24, 2008, the Petitioning Creditors filed a withdrawal of opposition to MicroStructure's Motion to Dismiss and set the matter for an expedited hearing to be held on November 4, 2008. On November 10, 2008, the Court entered an Order Dismissing Involuntary Petition. The Order retained jurisdiction to consider MicroStructure's request for attorneys' fees and damages under 11 U.S.C. § 303(i).

On November 18, 2008, the parties submitted an agreed order requesting a continuance of the December 3, 2008 hearing date. The evidentiary hearing on MicroStructure's request for attorneys' fees and damages was continued to March 4, 2009, and then to April 8, 2009. The evidentiary hearing was held on April 8, April 9, and because of the unavailability of a witness was concluded on June 18, 2009.

**II**

**CONCLUSIONS OF LAW**

MicroStructure seeks an award of attorneys' fees and costs under 11 U.S.C. § 303(i)(1), an award of actual damages under 11 U.S.C. § 303(i)(2)(A) and an award of punitive damages under 11 U.S.C. § 303(i)(2)(B).

A.  Attorneys' Fees and Costs

When an involuntary petition is dismissed on grounds other than the consent of the parties, and the debtor has not waived the right to judgment, a rebuttable presumption arises that reasonable fees and costs are authorized. Higgins v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 379 F.3d 701, 707 (9th Cir. 2004). "[A]ny petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed." In re Kidwell, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993). A rebuttable presumption exists that reasonable fees and costs are authorized in order "to reinforce the idea" that involuntary petitions "'should not be lightly undertaken,'" and "'to discourage inappropriate and frivolous filings.'" Vortex, 379 F.3d at 707 (quoting In re Advance Press & Litho, Inc., 46 B.R. 700, 702 (Bankr. D. Colo. 1984) and 1 Collier on Bankruptcy ¶ 303.15 (15th ed. 2004)). The petitioning creditor can overcome this presumption by establishing that factors exist under the totality of the circumstances that support the disallowance of fees. Vortex, 379 F.3d at 707.

In evaluating the totality of the circumstances, the court may consider such factors as the merits of the involuntary petition, the role of any improper conduct on the part of the debtor, the reasonableness of the actions taken by the petitioning creditors, and the motives or objections of the petitioners in filing the petition. See In re Maple-Whitworth, Inc., 556 F.3d

742, 746 (9th Cir. 2009), opinion corrected by 559 F.3d 917 (9th Cir. 2009); Vortex, 379 F.3d at 707. "Although definitive in most cases, this list is not exhaustive, and a bankruptcy court may, in its discretion, choose to consider other material factors it deems relevant." Vortex, 379 F.3d at 708.

The Court has considered the totality of the circumstances, and in particular the factors listed above, and concludes that the Petitioning Creditors have failed to rebut the presumption that reasonable attorneys' fees should be awarded in this case. The Petitioning Creditors' primary argument for disallowing fees is alleged improper conduct on the part of MicroStructure. The improper conduct complained of focuses on the accounting practices of MicroStructure's principals, the Moores. The Petitioning Creditors blame much of the company's financial difficulties on the Moores' inability to maintain adequate financial records, including the company's unfavorable audit report dated April 25, 2007, conducted by the Defense Contract Audit Agency. They further contend that a lack of financial records made the search for needed investors and hard money loans in 2008 a nearly impossible task. It is further alleged that the Moores not only failed to maintain adequate records and systems, but also improperly characterized loans from the principals as equity interests rather than debt, in an effort to make the company appear more profitable.

Although MicroStructure admittedly had to make substantial changes to its accounting systems in order to pass the defense contract audit, the Petitioning Creditors failed to establish that the blame was caused by the Moores. During this period, several persons, including one of the petitioning creditors, Dave Cook, was involved in assisting MicroStructure with the audit process. Further, the Moores were assisted by their outside accountant when accounting issues were presented. The Court concludes that a preponderance of the

MEMORANDUM DECISION - 5

evidence indicates that any failure by the Moores to maintain adequate records and books does not rise to the level of improper conduct that would warrant a denial of reasonable attorneys' fees.

The Court also took into consideration the Petitioning Creditors' motivation in filing and the merits of the involuntary petition, which will be discussed in more detail below in evaluating bad faith, and concludes that the totality of circumstances are insufficient to overcome the presumption that attorneys' fees should be awarded. Although the Court is of the opinion that the motivation behind filing the involuntary petition may have been a belief that this was the best course for ensuring that their claims were paid, as stated above, "any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed." Kidwell, 158 B.R. at 217.

The next step is determining what is a reasonable amount of fees and costs to be awarded in this case. "Unlike fee awards under 11 U.S.C. § 330, the statute, rules and case law interpreting § 303 have not delineated clear standards for finding whether a particular fee is justified. At a minimum, however, compensation should be reasonable." In re Wavelength, Inc., 61 B.R. 614, 621 (9th Cir. BAP 1986).

The only evidence presented as to the amount of fees and costs incurred are time records admitted as MicroStructure's Exhibit 69. Such records, however, are incomplete as they only cover services billed as of March 24, 2009. Although counsel for MicroStucture estimated at closing that the total attorneys' fees and costs are approximately $80,000, the Petitioning Creditors should be given an opportunity to review a complete accounting of the fees and object, if necessary. Admittedly, the records submitted also include fees incurred in other litigation, such as the pending receivership action, which are not recoverable under 11

MEMORANDUM DECISION - 6

U.S.C. § 303. The Court also notes that the time records as submitted are difficult to evaluate. For instance, the time records provided fail to indicate the date on which the services were actually performed. Rather, they indicate the date on which the fees for such services were billed. Although 11 U.S.C. § 330 is not applicable, a fee award under § 303(i) must still be "based on detailed accounts of services rendered" and the records submitted "should clearly identify the nature of work performed, its relevance to the defense to the involuntary petition, and the time expended." Wavelength, 61 B.R. at 621.

MicroStructure is instructed to submit a final and complete accounting of all attorneys' fees and costs sought in this case and note the matter for hearing. The Petitioning Creditors will then be given an opportunity to object on the basis that the amount sought is not reasonable. The Court has previously ruled in this Memorandum Decision that reasonable attorneys' fees should be allowed, so this hearing will be limited to that issue. In its pleadings, MicroStructure should also indicate whether it is requesting that the fees be awarded against the Petitioning Creditors equally or if a different allocation is being sought, in accordance with Maple-Whitworth, 559 F.3d at 745-46, and explain the reasons for its proposed allocation.

B. <u>Actual Damages</u>

Under 11 U.S.C. § 303(i)(2), the court has the discretion to award any damages proximately caused by an involuntary petition filed in bad faith. Bad faith is not defined by the Bankruptcy Code. Whether a party acted in bad faith is a question of fact. Bad faith is measured by an objective test and asks "'what a reasonable person would have believed.'" Wavelength, 61 B.R. at 620 (quoting In re Grecian Heights Owners' Ass'n, 27 B.R. 172, 173 (Bankr. D. Or. 1982)). Courts have employed an "expansive definition of bad faith to include ill will or malice toward the debtor or its owners." Wavelength, 61 B.R. at 620.

In this case, MicroStructure alleges that the Petitioning Creditors underlying motivation in filing the involuntary petition was to destabilize MicroStructure, so that they along with Birmingham, could seize control of its products and intellectual property. The Petitioning Creditors counter that their primary motivation was not to seize control of the company and its products, but a legitimate belief that bankruptcy was the best option for collecting on their debts.

In support, MicroStructure points to the fact that none of the Petitioning Creditors ever made demand for payment due on the Moores. Although Birmingham's testimony disputes this fact, both of the Moores testified that neither of them were aware that any of the Petitioning Creditors believed amounts were still owing until after the involuntary petition was filed. As it is undisputed that each of the Petitioning Creditors performed work for MicroStructure and dealt almost exclusively with Birmingham, not the Moores, the Court does not place much weight on the fact that the Moores may have been unaware of these debts prior to the filing. Birmingham testified that the Petitioning Creditors held legitimate claims prior to the filing of the involuntary petition and that numerous demands for payment had been made by each of the them. Each of the Petitioning Creditors also provided testimony and evidence to substantiate their claims. When evaluating bad faith, the issue is not necessarily whether the claims would be allowable, but whether the Petitioning Creditors believed at the time the involuntary petition was filed that they were legitimate. A preponderance of the evidence presented fails to indicate that these claims were fabricated in order to "create" creditors to file the involuntary bankruptcy. Although the claims may be disputed, the most credible evidence presented indicates that the Petitioning Creditors believed that they had legitimate claims when the involuntary petition was filed.

MicroStructure also emphasizes that Silberman formed his own company nine days after the involuntary petition was filed. MicroStructure argues that this is evidence that the Petitioning Creditors' underlying motivation all along was to drive it out of business and assume control through a new company. Both Silberman and Birmingham testified, however, that they had no intention of forming their own company until after the involuntary bankruptcy petition was filed and they realized that stabilizing the current company was no longer an option. Birmingham had been dismissed and his relationship with the Moores had further deteriorated. The Court finds his testimony to be credible. The Court also notes that a non-compete agreement was not signed when Birmingham was dismissed that would prevent him from starting his own company.

The Court further finds that the most credible evidence is that MicroStructure was struggling to pay its bills and was probably balance sheet insolvent when the petition was filed. The company was limping along, but most witnesses seemed to agree that the only reason it was able to survive is because of continued loans from the owners and their agreement to forego salaries.

Although the Court is troubled by the fact that the Petitioning Creditors filed the involuntary bankruptcy without formally retaining an attorney, the Court notes that they did not do so without obtaining legal advice. Not only is Silberman a licensed attorney in the State of Oregon, but he also consulted with attorney Frederick Smith (Smith), who represented Birmingham prepetition, both personally and as an officer of MicroStructure. Although not formally retained by the Petitioning Creditors, Smith testified that he met with Silberman, along with Birmingham, several times prior to the involuntary petition being filed and recommended

the filing. Smith testified that it was his opinion that bankruptcy was the best option for stabilizing the company at that time.

Bad faith is often difficult to evaluate, and the Court agrees that the facts of this case are in dispute. However, "[n]ot every failed reason for filing an involuntary petition amounts to 'bad faith'." In re Macke Int'l Trade, Inc., 370 B.R. 236, 257 (9th Cir. BAP 2007). The most credible evidence indicates that the Petitioning Creditors filed this involuntary petition with the intention of stabilizing a company that was struggling, both financially and internally between the shareholders, with the belief that this was the best option for ensuring that their debts were paid. The fact that Birmingham may have coordinated the filing is not determinative. The Court found credible his testimony that it was his intent to stabilize MicroStructure in promoting the involuntary bankruptcy, especially given the fact that he was one of the company's largest creditors and had developed most of the intellectual property necessary for the company to succeed. Based on the evidence presented, the Court concludes that a reasonable person would have believed that the involuntary bankruptcy filing was not in bad faith.

Even if the involuntary petition had been filed in bad faith, other than attorneys' fees, MicroStructure has failed to establish that all but $1,908 in damages was proximately caused by the filing. To award fees under 11 U.S.C. § 303(i)(2), the damages must be proximately caused by the petitioners' actions. The damages also need to be quantifiable. See Adell v. John Richards Homes Bldg. Co., 439 F.3d 248, 261-65 (6th Cir. 2006) (affirming an award of $4.1 in lost profits). "Generally, actual damages include compensatory damages, as opposed to noneconomic or punitive damages, and are defined as '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" In

MEMORANDUM DECISION - 10

re Roman, 283 B.R. 1, 9 n.9 (9th Cir. BAP 2002) (quoting Black's Law Dictionary (7th ed. 1999)).

In this case, MicroStructure seeks compensation for lost revenue. MicroStructure alleges that it lost revenue of approximately $118,400 on a contract with Dupont. Not only did MicroStructure fail to present sufficient evidence to support this amount, it failed to properly account for costs that were not deducted, and failed to establish that this loss was proximately caused by the filing. Rather, the more credible evidence indicated that the Dupont contract was lost because Birmingham had been terminated and the contract could not be completed without his assistance.

The same is true of the loss of revenue from the Air Force and Surface Extraction contracts. In regards to both of these contracts, MicroStructure alleges that they lost revenue due to the involuntary filing. However, Mary Moore's own testimony in regards to the Surface Extraction contract indicates that these funds were lost, not as a proximate cause of the involuntary bankruptcy filing, but because of Birmingham's failure to inform anyone else in the company of the contract's existence. MicroStructure apparently failed to bill for a month, because they were unaware of the need to do so, and were not able to go back and bill for the lost time. As for the Air Force contract, Mary Moore testified that MicroStructure lost revenue because Birmingham failed to inform them of work performed so that the time could be invoiced. There is no evidence that such damages were proximately caused by the involuntary bankruptcy filing.

MicroStructure also sought damages of over $40,000 for Mary Moore's lost time in having to deal with the added administrative requirements of the involuntary filing. The only evidence, however, to support this request was a time record that merely lists a daily hour

amount that Ms. Moore alleges was her "lost time." The State Court action was also pending at the time, and Ms. Moore has failed to specify what lost time is allegedly attributable to the involuntary bankruptcy as opposed to the State Court action. Damages must be quantified and adequately documented to allow the court to determine whether they are compensable. See McLean v. GMAC Mtg. Corp., 595 F.Supp.2d 1360, 1371 (S.D. Fla. 2009) (denying lost time damages where mortgagors' spreadsheets insufficiently quantified). MicroStructure failed to meet the legal burden of specifying these damages with sufficient detail to make them compensable, as well as failed to present adequate evidence in support of this claim.

The last item sought is amounts designated as "Interest and Fees." MicroStructure seeks $2,917 in interest on shareholder advances that were allegedly required due to the denial of a loan application by U.S. Bank and $3,587 in "interest and late fees incurred due to credit damage." According to Mary Moore's testimony, this last item is the damages incurred due to the fact that they were unable to obtain credit when the involuntary was filed and that rates went up by the time the bankruptcy was dismissed. No other explanation as to how this amount was calculated was provided. Not only was a lack of evidence to substantiate these amounts provided, but the evidence that was provided indicates that MicroStructure's credit worthiness was questionable prior to the bankruptcy filing. The testimony establishes that the company was unable to secure a traditional bank loan earlier in 2008, which forced them to pursue hard money loan options. Thus, MicroStructure is unable to establish that the loan denials and inability to obtain financing were proximately caused by the involuntary filing.

The only element of damages that might be compensable as proximately caused by the bankruptcy filing is the $1,908 in interest on a sales tax refund that was testified to as being held up by the Washington State Department of Revenue due to the involuntary filing.

MEMORANDUM DECISION - 12

Case 08-44074-PBS    Doc 76    Filed 07/17/09    Ent. 07/17/09 08:06:02    Pg. 12 of 13

However, as this was not a bad faith filling, the only damages compensable under 11 U.S.C. § 303 are MicroStructure's reasonable attorneys' fees. In summary, a preponderance of the evidence indicates that the alleged damages, even if properly documented, were the result of internal dissention between the MicroStructure shareholders, rather than the involuntary bankruptcy filing.

C. Punitive Damages

The Bankruptcy Code specifically authorizes punitive damages "even in the absence of actual damages." 11 U.S.C. § 303(i)(2); In re Advance Press & Litho, Inc., 46 B.R. 700, 706 (D. Colo. 1984). However, as with actual damages, punitive damages are only allowable if the petition was filed in "bad faith." 11 U.S.C. § 303(i)(2)(B). As stated above, the involuntary bankruptcy filing was not in "bad faith." Accordingly, punitive damages are not warranted.

DATED: July 17, 2009

_____*Paul B. Snyder*_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 13

Case 08-44074-PBS Doc 76 Filed 07/17/09 Ent. 07/17/09 08:06:02 Pg. 13 of 13